## Davis v. Camp.

(Decided March 17, 1925.)

### Appeal from Daviess Circuit Court.

1. Assault and Battery—Instruction as to Defendant's Right to Use Force in Ejecting Plaintiff Held Properly Refused as Not Within Issues.—In civil action for damages for assault, where defendant admitted striking plaintiff, but alleged it was in defense of his son-in-law, instruction as to defendant's right to use force in ejecting plaintiff from his premises held properly refused as not within evidence.

2. Assault and Battery—$680.00 Damages for Injuries to Head Held Not Excessive.—$680.00 for severe injuries to head from being struck with iron bar which caused substantial loss of hearing held not excessive.

T. F. BIRKHEAD for appellant.

LOUIS I. IGLEHEART and BEN D. RINGO for appellee.

Opinion of the Court by Judge Sampson—Affirming.

Appellant Davis struck appellee Camp on the head with an iron rod, inflicting severe injuries for which this suit was instituted in the Daviess circuit court to recover damages. The jury awarded Camp $680.00, on which judgment was entered. Davis appeals. Both men are farmers.

Davis admitted the striking but defended upon the ground that appellee Camp was threatening to do violence to W. L. Taylor, son-in-law of appellant, and that the blows were struck in defense of appellant's son-in-law, Taylor.

The evidence shows that appellant and his son-in-law, Taylor, were at their barn on the farm removing some machinery when appellee, Camp, and one Shelton stopped their automobile near the barn, Shelton going to the barn and Camp to a tenant house nearby. After Shelton arrived at the barn he and Taylor became involved in an angry dispute and were cursing each other. At this time appellee Camp had returned to his car and was occupying it. Hearing the altercation between Taylor and Shelton appellee Camp jumped from the car, crossed the fence and ran to the barn, saying, in substance, that no one must call him "a damn liar." Being assured that no one had called him "a damn liar," Camp, according to his evidence, was retiring from the scene of disturbance when appellant Davis struck him over the head two or more times with an iron bar about three (3) feet long, cutting a gash to the skull, rendering him unconscious and otherwise injuring him.

Appellant Davis says that appellee Camp unexpectedly rushed into the dispute, threatening to do Taylor, the son-in-law of appellant, personal violence, and was about to consummate his threat at the time he was struck; that appellee was approaching Taylor in a menacing manner as the blows were struck by Davis in defense of his son-in-law; that appellant believed and had reasonable grounds to believe that Taylor was in danger and that it was necessary, in order to protect him from great bodily harm at the hands of Camp, to so strike and wound Camp. Davis gives the following account of how the difficulty occurred:

"Mr. Camp drove down from his son-in-law's inside the field and got out of his car and he jumped that wire fence and there was another fence, but

there was a gate there. I don't know whether he got over it or not. I was fastening the door when he came. I didn't see Mr. Camp until he got as close to me as from here to the far end of the courthouse, and he was coming in kind of a fox-trot or can't lope, or something of the kind, and he come up giving it this to beat the devil and I thought he was going to knock my son-in-law in the head, the way I had heard people talk about him and I tapped him with a thing similar to that.

"Q. What was he saying? A. He said, 'You must not call me a damn liar.' Lindsey had called Shelton a damn liar and Shelton had throwed his coat off and said 'come on,' and Lindsey Taylor said, 'I ain't hunting no fight or fuss or anything of the kind.' Q. How close did he come to Lindsey Taylor? A. He was in reach of him and I thought was going to strike him and I didn't know with what or nothing of the kind. I asked him to get off twice, if not three times; I believe I asked him three times, but the others say I only asked him twice, but I know I did that much, and he kept saying, 'what do you mean by calling me a damn liar?' and I reached up with that thing I had fastening the doors and tapped him.'

In answer to the question, "Why did you hit him?" appellant Davis answered: "Because I thought he was going to hit my son-in-law." Further along in his testimony appellant said: "We had always been friends as far as I know, and I haven't a thing in the world against him to this day, although I knocked him down; I don't deny it. Q. How did he fall? A. He made two or three steps backward and fell over sorter on his hip and elbow and stayed there five or ten minutes with his head resting on his hand that way, and Lindsey went to him and told him he had better get up and get away from there."

Appellant insists that the judgment should be reversed upon two grounds: (a) Failure of the court to give instruction "A" offered by appellant; (b) the verdict is excessive.

Instruction "A" offered by appellant reads:

"If the jury believe from the evidence that they have heard in this case that the defendant requested the plaintiff to get off of his premises and the plaintiff declined or refused to go then the defendant had

the right to use reasonable force to eject the plaintiff from his premises."

The court declined to give this instruction, and we think its ruling correct. According to the evidence of appellant, Davis, he struck appellee Camp to prevent him from assaulting and injuring Taylor, the son-in-law of appellant, and not in an effort to drive him from the premises. Appellant, Davis, had no right to strike or otherwise injure appellee, Camp, in order to induce him to leave the premises unless it was necessary or appeared to Davis in the exercise of a reasonable judgment to be necessary in order to overcome such resistance as Camp may have offered to appellant's efforts to induce or compel Camp to leave the premises. As there was no question of fact as to the purpose for which appellant struck appellee, Davis having admitted that he struck Camp in defense of Taylor, the instruction offered by appellant had no place in the law of the case. The blow was delivered, not to induce appellee, Camp, to leave the premises, but to prevent Camp from doing violence to Taylor. This being true the court very properly refused to give instruction "A" above copied.

"B." We do not think the damages awarded are excessive. It is clear from the evidence that appellee, Camp, received a very severe injury to his head. The iron bar was a heavy instrument, deadly in its character when used in the way and manner employed by appellant. While appellant, Davis, says he "tapped" appellee, Camp, on the head, the results strongly tend to show that it was a blow rather than a "tap," for it knocked appellee, Camp, to the ground and rendered him unconscious, according to part of the evidence. At any rate two or more gashes were cut to the skull, and appellee, Camp, testifies that his hearing was affected so that he is now almost deaf. A verdict for $680.00 under the facts and circumstances presented by this record cannot be said to be excessive or to have been the result of passion or prejudice on the part of the jury. The finding, it seems to us, was very moderate when the injury is considered. There is, therefore, no good reason shown why the judgment of the lower court should be reversed, hence it is affirmed.

Judgment affirmed.